UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEON E. REYES ARIZMENDI, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 25 C 13041 ) |
| KRISTI NOEM, Secretary, U.S. Department of Homeland Security; SAMUEL OLSEN, Deputy Field Office Director, Immigration and Customs Enforcement; PAMELA BONDI, U.S. Attorney General; U.S. DEPARTMENT OF HOMELAND SECURITY, | ) Judge Rebecca R. Pallmeyer ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Petitioner Leon E. Reyes Arizmendi ("Arizmendi" or "Petitioner"), a noncitizen alien detained by Immigration and Customs Enforcement ("ICE"), petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. As explained below, the petition is granted. Within five business days, Respondents must either: (1) provide Arizmendi with a bond hearing before an Immigration Judge, at which the Government shall bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, his continued detention; or (2) release Arizmendi from custody, under reasonable conditions of supervision.

## DISCUSSION

Petitioner Arizmendi last entered the United States in May 2022 and has continuously resided here since then. (Pet. [1] ¶ 37, 40.) Arizmendi lives in Elkhart, Indiana with his wife and his eleven-month-old daughter, a U.S. citizen. (*Id*.) He has no criminal history. (*Id*. ¶ 40.) On October 24, 2025, Arizmendi was detained in Chesterton, Indiana on his way to work, and was subsequently processed at the ICE facility in Broadview, Illinois. (*Id*. ¶ 38.) ICE charged Arizmendi with entering the United States without inspection under 8 U.S.C. § 1182(a)(6)(A)(i).

Based on this charge, ICE deemed Arizmendi to be an "applicant for admission" and thus subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) of the Immigration and Nationality Act ("INA"), which authorizes detention of aliens "seeking admission." (*Id.* ¶ 3.) Arizmendi has not been given a bond hearing.

In this petition, Arizmendi challenges his detention as unlawful, arguing that he is not subject to § 1225. He contends that he is entitled to a bond proceeding, authorized by 8 U.S.C. § 1226 for aliens already present in the United States. He claims violations of the INA (Count I) and the Due Process Clause of the Fifth Amendment (Count II). He brings this action against Respondent Samuel Olson, the Chicago Field Office Director for the Department of Homeland Security ("DHS").[1]

Arizmendi filed the instant habeas petition while being held at the Broadview facility, which is within the Northern District of Illinois; after he filed the petition, Arizmendi was transferred to the North Lake Processing Center in Baldwin, Michigan, and from there, to the Clay County Detention Center in Brazil, Indiana, where he is detained today.[2] (Resp. Status Rep. [6] at 1.)

**I.     Jurisdiction**

As an initial matter, the court must determine its jurisdiction to rule on this petition. Mirroring arguments it has made in numerous courts around the nation, the government contends that three provisions of the INA divest this court of jurisdiction: 8 U.S.C. § 1252(g), 8 U.S.C. § 1252(b)(9), and 8 U.S.C. § 1252(a)(2)(B). The vast majority of courts who have addressed this challenge to their jurisdiction, including many judges in this District, have rejected the challenge. *See, e.g.*, *Ochoa v. Noem*, No. 25 CV 10865, 2025 WL 2938779 (Jenkins, J.) (N.D. Ill. Oct. 16,

---

[1] Defendants do not contest that Olson is the proper respondent in this petition. (Resp. to Pet. [7] at 1, n.1.)

[2] Because Arizmendi was in custody at the Broadview facility in Illinois when he filed his petition, the court may properly hear his petition despite his subsequent transfers. *In re Hall*, 988 F.3d 376, 378 (7th Cir. 2021) ("a prisoner's transfer from one federal facility to another during the pendency of a habeas corpus proceeding does not affect the original district court's jurisdiction"); *Ex parte Endo*, 323 U.S. 283 (1944).

2025); *Flores v. Olson*, No. 25 C 12916, 2025 WL 3063540 (Gettleman, J.) (N.D. Ill. Nov. 3, 2025); *Cortes v. Olsen*, No. 25 C 6293, 2025 WL 3063636 (Kennelly, J.) (N.D. Ill. Nov. 3, 2025). As explained below, the court agrees with the weight of authority and finds it has jurisdiction to consider this petition.

### A. Section 1252(g)

The government first argues that § 1252(g) of the INA strips the court of jurisdiction over any challenge to a noncitizen's detention in relation to removal proceedings. That provision states:

> [N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). The government believes this provision applies because Petitioner was detained by ICE in connection with the government's intent to remove him from the United States, meaning that his detention "arise[s] from the decision . . . to commence proceedings" against him.

The court disagrees. The reach of this provision is narrow—"only challenges to the three listed decisions or actions—to commence proceedings, adjudicate cases, or execute removal orders—are insulated from judicial review." *E.F.L. v. Prim*, 986 F.3d 959, 964 (7th Cir. 2021). The statute does not, as the government seems to believe, insulate from judicial review any detention decision that is oriented toward the removal of an alien from the United States. As the Supreme Court has explained, § 1252(g) does not apply to anything beyond those "three discrete actions that the Attorney General may take." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) ("We did not interpret [the language in § 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves.").

3

Because "nothing in § 1252(g) precludes review of the decision to confine," it does not apply here.[3] *Carrera-Valdez v. Perryman*, 211 F.3d 1046, 1047 (7th Cir. 2000); *see, e.g., Fornalik v. Perryman*, 223 F.3d 523, 532 (7th Cir. 2000) (holding that the provision did not preclude judicial review of a noncitizen's habeas petition challenging an action unspecified in § 1252(g)); *Guerrero Orellana v. Moniz*, No. 25-cv-12664-PBS, 2025 WL 2809996, *4 (D. Mass. Oct. 3, 2025) (concluding that § 1252(g) did not apply to habeas challenge of ongoing detention without a bond hearing); *D.S. v. Bondi*, No. 25-cv-3682, 2025 WL 2802947. *5 (D. Minn. Oct. 1, 2025) (same).

B.  **Section 1252(b)(9)**

Next, the government argues that Arizmendi's habeas petition constitutes an impermissible collateral attack on his removal proceedings. Under the INA, the Court of Appeals is the exclusive forum for judicial review "of all questions of law . . . including interpretation and application of constitutional and statutory provisions, arising from any action taken . . . to remove an alien from the United States." 8 U.S.C. § 1252(b)(9). The government contends here that petitioner's detention "arose" out of the decision to remove him from the United States and is therefore unreviewable under the statute.

The court, again, disagrees. The "arising from" language in this provision is identical to the language in § 1252(g) which, as the court has already explained, has been interpreted narrowly by the courts. Indeed, the Supreme Court has rejected the same expansive reading that the government invites this court to apply. In *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018), the Supreme Court examined this exact provision and found that "questions of law" as to whether "certain statutory provisions require detention without a bond hearing" (or, as is the case here, *permits* such detention) do not "arise from" the decision to remove an alien from the country.

---

[3] *Sissoko v. Rocha*, 509 F.3d 947 (9th Cir. 2007), cited by the government, is inapposite. In that case, the alien was pursing relief under *Bivens*, which "directly challenge[d] [the respondent's] decision to commence expedited removal proceedings." *Id.* at 950. That is not the case here. The *Sissoko* court itself observed that habeas relief *was* an acceptable alternative to the *Bivens* action he sought to pursue. *Id.* at 950 (finding that "an alternative habeas remedy directly addressing the claimed injury was available through 8 U.S.C. § 1252(e)(2)").

4

*Jennings* explicitly forecloses the government's reading of this statute. Here, Petitioner is challenging his detention under § 1225 and his entitlement to a bond hearing; under *Jennings*, § 1252(b)(9) does not divest this court of its jurisdiction to consider his habeas petition.

### C. Section 1252(a)(2)(B)(ii)

Finally, the government argues that § 1252(a)(2)(B) of the INA precludes this court from considering a challenge to any discretionary decision by the Attorney General or Secretary of Homeland Security. That provision states that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . ." 8 U.S.C. § 1252(a)(2)(B). Because § 1226 of the INA commits the decision to grant or deny bail to the discretion of the Attorney General, the government asserts, that decision is unreviewable under the INA. But this argument is circular. The government is correct that the decision to grant or deny bond is discretionary—but this habeas petition is being brought precisely because the government has refused to grant Petitioner a bond hearing, meaning that the discretionary bond decision was never made in the first place. *See D.E.C.T. v. Noem.*, No. 25 C 12463, 2025 WL 3063650, at *3 (Tharp, J.) (N.D. Ill. Nov. 3, 2025). The decision being challenged here is the government's decision to detain pursuant to § 1225, and that decision is not committed to the discretion of Executive Branch officials. *See* 8 U.S.C. § 1225.

### II. Detention under the INA

Having determined that it has jurisdiction to hear this case, the court turns to the merits of Arizmendi's statutory claims. Habeas relief is available whenever an individual "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). As the petitioner, Arizmendi bears the burden of proving, by a preponderance of the evidence, that his detention is unlawful. *Ochoa Ochoa*, 2025 WL 2938779, at *2.

5

The core dispute in this case is the interplay between two provisions of the INA: § 1225 and § 1226. Both provisions concern the detention of aliens; the primary difference between the two is that § 1226 allows for release of an alien on bond conditions (and thus entitles them to a bond hearing), whereas § 1225 requires the detention of certain aliens while their removal proceedings are pending, so long as they are not "clearly and beyond a doubt entitled to be admitted." *See* § 1225(b)(2)(A). The government claims Petitioner is subject to detention under § 1225; Petitioner contends that § 1225 does not apply to him, and argues that he is entitled to a bond hearing under § 1226.

Whether § 1225 applies to Petitioner is a question of statutory interpretation. Judge Jenkins of this court addressed the issue in *Ochoa Ochoa v. Noem*, 2025 WL 2938779, *4-5, and the court fully concurs with her analysis. By its terms, § 1225 applies to aliens who are part of a group of "applicant[s] for admission." An applicant for admission is defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States," § 1225(a)(1), and "fall[s] into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings*, 583 U.S. at 288. Aliens within the second category are subject to a catchall mandatory detention provision: "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for [full removal proceedings under § 1229]." 8 U.S.C. § 1225(b)(2)(A). Unlike noncitizens detained under § 1226(a), those detained under § 1225 may be released only "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)).

Section 1226, in contrast, applies to aliens who are "already present in the United States." *Jennings*, 583 U.S. at 303. Under this provision, immigration authorities may make an initial determination as to detention, but detainees can then request a bond hearing before an immigration judge. *See* 8 C.F.R. § 1236.1(c)(8), (d)(1). At the hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no

6

danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d); *Matter of Guerra*, 24 I& N. Dec. 37 (BIA 2006)).

The government interprets § 1225 broadly—it argues that that *all unadmitted foreign nationals* are subject to this provision, "regardless of their proximity to the border, the length of time they have been present here, or whether they ever had the subjective intent to properly apply for admission." (Opp. [7] at 25.) Because of this, the government argues, Petitioner is "unambiguously an 'applicant for admission' because he is a foreign national, he was not admitted, and he was present in the United States when he was apprehended by ICE." (*Id.*)

The court disagrees. The government's interpretation of § 1225 does not withstand scrutiny. If, as the government suggests, § 1225 applies to *all* aliens unlawfully in the United States, § 1226 would be rendered superfluous—a disfavored result. *See Pulsifer v. United States,* 601 U.S. 124, 143 (2024) (explaining that, under the canon against surplusage, courts do not interpret entire provisions of statute to be meaningless). In *Jennings*, the Supreme Court adopted reasoning at odds with the government's argument here; writing for the Court, Justice Alito explained that the procedures of § 1226 are the "default rule" that applies generally to "aliens already present in the United States," whereas § 1225 applies to aliens who arrive at the U.S. border "seeking admission into the country." *Jennings*, 583 U.S. at 281, 289, 303. That interpretation makes sense, and was bolstered by Congress's recent passage of the Laken Riley Act, which disqualifies from bond eligibility any unadmitted aliens who have been charged or convicted of theft offenses. *See* § 1226(c)(1)(E); 8 U.S.C. § 1182(a)(6)(A). If the government is correct, and all unadmitted aliens are *already* subject to mandatory detention under § 1225, the Laken Riley Act would also be rendered superfluous and redundant.[4]

---

[4] In response to this petition, the government submitted its prior brief from *Ochoa Ochoa v. Noem*, No. 25 C 10865, arguing that "respondents wish to reiterate" those same arguments in this case. Judge Jenkins already rejected those same arguments in a well-reasoned opinion, *see Ochoa Ochoa*, 2025 WL 2938779, which echoes similar decisions from other courts all across the country. The court adopts Judge Jenkins's analysis in full here.

7

The court concludes that Arizmendi's detention without a bond hearing is inconsistent with 8 U.S.C. § 1225 and also constitutes a due process violation. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). The government may argue that *Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103, 140 (2020) limits Arizmendi's due process rights in this context. In that case, the Court held that an alien apprehended just twenty-five yards from the border did not acquire due process protections. Judge Jenkins found that situation distinguishable from her case, and this court again agrees with its colleague. Arizmendi has resided in this country for over three years and was detained in Indiana. The most reasonable understanding is that he was "already in the country." *See Ochoa*, 2025 WL 2938779, at *7 (citing *Jennings*, 583 U.S. at 289.

Courts balance three factors to determine whether a due process violation has occurred: "first, the private interest at stake; second, the risk of erroneous deprivation and the value, if any, of additional procedural safeguards; and third, the government's countervailing interests." *Simpson v. Brown Cnty.*, 860 F.3d 1001, 1006 (7th Cir. 2017) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Those factors support Arizmendi's claim: His private interest in his liberty is great. The risk of erroneous deprivation without the bond hearing to which Arizmendi is entitled is high. And any interest the government has in avoiding the cost of a bond hearing or in ensuring the petitioner does not flee is outweighed by the first two considerations. As many other courts have concluded, absent a "special justification," Arizmendi's detention without a bond hearing violates due process. *Zadvydas*, 533 U.S. at 690 (government detention violates the Due Process Clause in civil cases unless "a special justification . . . outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" (quoting *Kansas v. Hendricks*, 512 U.S. 346, 356 (1997)); *Ochoa*, 2025 WL 2938779, at *7 (collecting cases).

The court thus has no difficulty determining that Petitioner is entitled to the bond hearing envisioned by the "default rule" of 8 U.S.C. § 1226. *Jennings*, 583 U.S. at 303. In addressing

this dispute, the court notes that it is not adjudicating this case on a blank slate. Detainees across the United States in these circumstances have sought habeas relief, and the vast majority of the courts considering these claims have found the government's position untenable. The court agrees with its colleagues' conclusions. *See, e.g.*, *Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787 (Cummings, J.) (N.D. Ill. Oct. 24, 2025); *Salazar v. Dedos*, No. 1:25-CV-00835-DHU-JMR, 2025 WL 2676729 (D.N.M. Sept. 17, 2025); *H.G.V.U. v. Smith*, No. 25 C 10931, 2025 WL 2962610 (Coleman, J.) (N.D. Ill. Oct. 20, 2025); *Guerrero Orellana v. Moniz*, No. 25-CV-12664-PBS, 2025 WL 2809996 (D. Mass. Oct. 3, 2025); *Belsai D.S. v. Bondi*, No. 25-CV-3682, 2025 WL 2802947 (D. Minn. Oct. 1, 2025); *Garcia v. Noem*, No. 25-CV-02180, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Kostak v. Trump*, No. 3:25-cv-01093, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Lepe v. Andrews*, ___ F. Supp. 3d ___, No. 1:25-CV-01163, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025).

The government invites the court to adopt the reasoning given by the BIA in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), which found that "foreign nationals who entered the United States without inspection were not eligible for bond hearings in immigration court because the individuals were technically never admitted to the United States." (*See* Opp. [7] at 1.) But its decision is not binding on this court, nor is the court required to defer to its reasoning. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024). And with due respect to the Board, the court does not find its reasoning to be persuasive, for the reasons discussed above.

**CONCLUSION**

Because Petitioner is neither in expedited proceedings nor a noncitizen alien who is "seeking admission," the court finds that he is not lawfully detained under § 1225(b). The petition for a writ of habeas corpus is granted.

The court directs the government, within five business days, to either provide Petitioner with a bond hearing before an Immigration Judge, at which the government shall bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, his continued detention; or (2) release Petitioner from custody, under reasonable conditions of supervision. The parties are directed to file a written status report confirming compliance with this order no later than November 13, 2025.

ENTER:

Dated: November 5, 2025

REBECCA R. PALLMEYER
United States District Judge